## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MUTTAQUIN F. ABDULLAH,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:15-1153** |
| | : | |
| **v** | : | |
| | : | **(JUDGE MANNION)** |
| **LT. MILLER,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

## I.    Background

Plaintiff, Muttaquin F. Abdullah, an inmate formerly confined[1] in the Lee County Detention Center, Sumter, North Carolina, filed the above captioned action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). (Doc. 1, complaint). Plaintiff names as Defendants, the United States, and Lieutenant Randy Johnson, Lieutenant Daniel Knapp and Foreman Roger Miller, all employees at USP-Lewisburg, Plaintiff's prior place of confinement.

Plaintiff alleges that on August 22, 2013, he and his cellmate "had a man to man fist fight with no injuries from each other." Id. He states that "after both inmates stop[ed] fighting, inmate Bates was taken out of the cage and placed in handcuffs, while [Plaintiff] was lying face down on the pavement

---

[1]Plaintiff was released from confinement on March 21, 2016. See https://www.bop.gov/inmateloc/.

until the Lts. arrived to the scene." Id. Plaintiff claims that, although when Defendants Miller, Knapp and Johnson arrived at the scene, "the fight was over and both inmates had already been separated", one of the Defendants "shot [Plaintiff] several times in his lower back and another sprayed [him] with the gas." Id. Plaintiff states that "the gun that [he] was shot with carries rubble(sic) bullets that left [him] with severe bruises on his lower back, that made blood visible." Id. A few minutes later, Plaintiff claims that he was "told to get up and come to the entrance of the cage to be handcuffed." Id. Plaintiff was then escorted to the holding cell to be strip searched and decontaminated from the gas. Id. Plaintiff was then medically assessed.

On June 11, 2015, Plaintiff filed the instant action in which he seeks compensatory damages. Id.

Presently before the Court is Defendants' motion to dismiss and/or for summary judgment. (Doc. 18). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion to dismiss and for summary judgment will be granted.

II.  **Standards of Review**

A. **Bivens Standard**

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance

with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

## B. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must

"accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual

elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed App'x. 183 (3d Cir. 2008).

## C. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

5

Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely

disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

III.   **Statement of Facts**[2]

On August 22, 2013, Plaintiff was served with Incident Report No. 2483203, charging him with Fighting with Another Person, a Code 201 violation, and Refusing an Order, a Code 307 violation. (Doc. 25-1 at 26, Incident Report). The incident report, which was written by Officer D. Campbell, reads as follows:

> On the above date and time I observed the following inmates involved in a physical altercation: Abdullah #12465-171 and Bates #54574-019. Specifically, while walking by Rec Cage #3, I observed the above mentioned inmates involved in a physical altercation with one another striking each other about the head and torso with closed fists. At that time I called Control for assistance. I then ordered all the inmates to cease their actions to which they continued to fight. The D-Block Lieutenant arrived on the scene and took over the situation. It should also be noted that inmate Parks #09540-008 was also in the recreation pen but

---

[2]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 25) will be deemed admitted.

was a non-participant. I received no injuries or loss of equipment.

Id.

On August 23, 2013, Plaintiff appeared before the Unit Discipline Committee ("UDC"). (See Id., Committee Action). Plaintiff "admitted to fighting with inmate Bates #54574-019." Id. Based upon the written account of the reporting staff member that Plaintiff did commit the prohibited acts, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending appropriate sanctions not available to the UDC. Id. During the UDC hearing, staff member, R. Marr, informed Plaintiff of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 32, Inmate Rights at Discipline Hearing).

On August 23, 2013, Abdullah was provided with a "Notice of Discipline Hearing before the (DHO)" form.  (Id. at 31).  He requested to have a staff member represent him.  Id.  He did not request to call any witnesses.  Id.

On September 3, 2013, Abdullah appeared for a hearing before DHO B. Chambers. (Doc. 25-1 at 64-67, DHO Report). During the DHO hearing, Plaintiff was again read his rights, and he indicated that he understood them. Id. Plaintiff offered the following statement on his behalf:

> Inmate Abdullah acknowledged he understood his rights before
> the DHO and was ready to proceed with the hearing.  Inmate

> Abdullah stated he made no specific requests of his staff
> representative, Counselor Shuck, in this case. Inmate Abdullah
> presented no documents for the DHO to consider. Inmate
> Abdullah testified that Section 11 of the incident report is
> accurate. Inmate Abdullah testified "There's no doubt about it, it
> was a fight, right. I just want to know why they shot me up
> afterwards? We had already stopped fighting." Inmate Abdullah
> made no complaints of procedural errors during the hearing."

Id.

In addition to the Incident Report and Investigation, the DHO also relied

on memoranda of Miller and Knapp, dated 8-22-2013; Bureau of Prisons

Health Services Clinical Encounter forms, dated 8-22-2013, prepared with

regard to inmate Abdullah, #12465-171, and Bates, #54574-019; Photographs

of inmates Abdullah and Bates, taken following the incident; video footage of

the incident, recorded by the video camera surveillance system. Id. The

specific evidence taken from the relied upon documentary evidence was as

follows:

> As noted in Section III.B. of this report, Abdullah presented
> testimony in his defense, which does not present specific
> evidence material to determining whether Abdullah committed the
> prohibited act charged in this case, rather appears intended to
> document complaints regarding stuff use of chemical munitions
> during the incident. Abdullah was informed by the DHO, in the
> presence of his staff representative, that a discipline hearing is
> not the forum to raise such issues, nor is a discipline hearing the
> means to redress such complaints. Abdullah was advised to
> report these complaints via a Request for Administrative Remedy,
> or other appropriate means, in an effort to have his concerns

addressed. The DHO informed Abdullah that his complaint regarding staff use of chemical munitions during the incident ("I just want to know why they shot me up afterward? We had already stopped fighting.") is not evidence material to determining whether Abdullah committed the prohibited acts charged in this case.

The DHO finds inmate Abdullah committed the prohibited act of Fighting. This finding is based upon the eyewitness written account of the reporting officer, which indicates on 8-22-2013 at 7:10 a.m., the reporting officer observed inmates Abdullah, #12465-171, and Bates #54574-019, involved in a physical altercation. Specifically, the reporting officer walked by Recreation Cage #3 and observed inmates Abdullah and Bates striking each other about the head and torso with closed fists. At that time, the reporting officer called Control for assistance and ordered the inmates to cease their actions, which they refused. The D-Block Lieutenant arrived on the scene and took over the situation. The reporting officer notes that inmate Parks, #09540-008, was also in the recreation pen, but was a non-participant.

This finding is further based on the video footage of the incident, recorded by the video camera surveillance system. The DHO's review of this video footage is documented as follows:

7:11:43 AM Inmates Abdullah and Bates are initially observed standing in the recreation pen. Bates is observed walking toward Abdullah, and the inmates are observed speaking to one another while waving their hands about in front of their bodies. Inmate Abdullah strikes Bates on the head with a left-hand closed fist punch, followed by a right-hand closed fist punch. Abdullah then attempts to strike Bates with another left-hand closed fist punch, followed by a right-hand closed fist punch. Abdullah then attempts to strike Bates with another left-hand closed fist punch directed at Bates' head, which appears to miss.

7:11:50 AM Bates steps back away from Abdullah. Bates and Abdullah stand facing one another "squared off" in boxing or

11

> fighting type stances, in a semi-crouch, elbows bent, with right and left hand closed fists presented in front of their respective bodies.
>
> 7:11:54 AM Bates and Abdullah step toward each other almost simultaneously, and begin throwing right and left hand closed fist punches at each other's head areas, in rapid succession. Bates and Abdullah continue to strike each other in the had and upper body areas with right and left hand closed fist punches until 7:12:07 AM, at which time staff are observed arriving at the scene, at which time Bates and Abdullah cease striking each other with closed fists, and step away from one another.
>
> Finally, this finding is further based upon the testimony of inmate Abdullah, in which he admitted that Section 11 of the incident report is accurate. Inmate Abdullah testified "There's no doubt about it, it was a fight".
>
> The evidence in this case, therefore, supports the finding inmate Abdullah committed the prohibited act of Fighting, Code 201.

Id. The DHO sanctioned Abdullah to disallowance of twenty-seven (27) days

good conduct time, thirty (30) days disciplinary segregation, and ninety (90)

days loss of commissary and visiting privileges. Id. The DHO documented his

reasons for the sanctions given as follows:

> Fighting in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Abdullah's period of incarceration. Loss of

> commissary and visiting privileges are imposed to demonstrate
> that engaging in misconduct will result in the loss of pleasurable
> privileges while incarcerated.

Id. The DHO advised Plaintiff of his right to appeal the decision within 20 days

under the Administrative Remedy Procedure. Id.

On June 4, 2014, Plaintiff filed an administrative tort claim, pursuant to

the Federal Tort Claims Act (FTCA). (Doc. 2 at 4, FTCA denial).

On December 1, 2014, the Northeast Regional Office of the Federal

Bureau of Prisons denied Plaintiff's Administrative Tort Claim as follows:

> Your Administrative Claim No. TRT-NER-2014-04418, properly
> received on June 4, 2014, has been considered for settlement as
> provided by the Federal Tort Claims Act (FTCA), 28 U.S.C.
> §2672, under authority delegated to me by 28 C.F.R. §543.30.
> Damages are sought in the amount of $100,000.00 based on a
> personal injury claim. Specifically, you allege you were subjected
> to excessive use of force by USP Lewisburg staff on August 22,
> 2013.
>
> An investigation, including review of your medical records, shows
> on August 22, 2013 USP Lewisburg staff had to use force to
> restrain you during an altercation with another inmate. The
> actions taken by USP Lewisburg staff during the incident were
> reasonable. The medical records do not show any evidence that
> you suffered serious injuries as a result of the use of force. There
> is no evidence that you experienced a compensable loss as the
> result of negligence on the part of any Bureau of Prisons
> employee. Accordingly, your claim is denied.
>
> If you are dissatisfied with this decision, you may bring an action
> against the United States in an appropriate United States District
> Court within six (6) months of the date of this memorandum.

13

Id.

On June 11, 2015, Plaintiff filed the above captioned action, in which he seeks a "ten million dollar settlement." (Doc. 1).

On August 8, 2015 a search of Plaintiff's name in the Administrative Remedy Generalized Retrieval system, revealed no administrative remedy concerning excessive force, or DHO appeal of a code 201 violation, was filed by Plaintiff within twenty days of September 3, 2013, the date of Plaintiff's disciplinary hearing. (See Doc. 25-1 at 12-25, Administrative Remedy Generalized Retrieval).

## IV.   Discussion

Defendants contend that Abdullah's complaint should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison

conditions brought under federal law.  See 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants.

Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all  inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. §542.10. Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden.  28 C.F.R. §542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at §542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. Id. at §542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final administrative appeal in the Bureau of Prisons. Id.

The record reveals that, although Plaintiff was counseled as to filing an

administrative remedy with respect to his allegations of excessive force by the

Defendants (see Doc. 25-1 65), and was advised of his right to appeal the

DHO's findings (see Id. at 67), there is no evidence that Plaintiff filed an

administrative remedy regarding his claim of excessive force, or that he

appealed the Code 201 violation. To the extent that Plaintiff argues that

"during the month of September, 2013" he "sent" a BP-8 and BP-9 to Warden

Thomas and the warden "never responded to [his] grievance complaint," (Doc.

2 at 1), there is no record of a grievance filed by Plaintiff at the institution

level, during the month of September, 2013.[3] Likewise, with respect to

Plaintiff's argument that "during the month of October, 2013, [he] filed a BP-10

to the Regional Office in the city of Philadelphia, PA, and the Regional Office

responded by informing [him] that they could not give [him] a disposition to

[his] complaint with the BP-8 and BP-9 grievance forms not attached with [his]

BP-10", (Id.), the record reveals that Plaintiff had two administrative

submissions in the month of October, 2013. (See Doc. 25-1 at 14,

Administrative Remedy Generalized Retrieval, Remedy ID 754081-R1 and

---

[3]The only activity reflected for the month of September, 2013, is a September 9, 2013 appeal to the Northeast Regional Office, filed by Plaintiff, from the denial of his August 19, 2013 grievance concerning the confiscation of property. (See Doc. 25-1 at 14, Administrative Remedy Generalized Retrieval, Remedy ID 746719-R1).

Remedy ID 754221-R1). Plaintiff's first filing was an October 11, 2013 appeal of a Code 205 violation to the Northeast Regional Office, a matter unrelated to this action, and the second filing was an October 15, 2013 appeal to the Northeast Regional Office regarding "staff complaint", which was rejected on October 22, 2013, and no further action was taken on it. Thus, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir. 2004). Abdullah's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.[4]

---

[4]Although not filed as an FTCA case, the Plaintiff does name the United States as a Defendant and submits a copy of the FTCA remedy he pursued. The Court notes, however, that the FTCA provides that a tort claim against the United States is barred "unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. §2401(b); see also 28 C.F.R. §14.9(a) (stating that if a claimant is dissatisfied with the final denial of an administrative claim, "he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification"). The final denial of Plaintiff's claim was mailed on December 1, 2014. (Doc. 2 at 4, FTCA denial). Plaintiff was therefore required to file any action in this Court by June 1, 2015. Because Plaintiff did not commence this action until June 11, 2015, his claim is barred by the statute of limitations period. See, e.g., Dickson v. United States, No. 1:14-CV-1784, 2016 WL 3569107 (M.D. Pa.

(continued...)

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Abdullah failed to exhaust his administrative remedies with respect to his excessive force claim, or the appeal of his Code 201 violation. Thus, Abdullah has sustained a procedural default with respect to these claims.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231.

---

[4](...continued)
July 1, 2016) (holding that the plaintiff's claim was barred because it was filed one day after the six-month statute of limitations period expired); Youlo v. United States, No. 12-CV-3135, 2013 WL 4479199 (E.D. Pa. Aug. 21, 2013) (rejecting the plaintiff's argument that "she never received the claim denial notice" and holding that her claim was barred because it was not filed within the applicable six-month statute of limitations); Forman v. United States, No. 98-CV-6784, 1999 WL 793429 (E.D. Pa. Oct. 6, 1999) (explaining that "the terms of the statute make mailing, not receipt, the relevant act," and holding that the plaintiff's suit was untimely).

In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Abdullah offers no evidence to justify his failure comply with BOP requirements. Consequently, he is now foreclosed from litigating his remaining claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate

20

justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants.

## V.   **Conclusion**

Defendants are entitled to summary judgment for Plaintiff's failure to properly exhaust available administrative remedies prior to filing the instant action. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 29, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1153-01.wpd